IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PAUL CITARELLA,

    Plaintiff,

v.

GOLDLEAF FINANCIAL SOLUTIONS, INC.,

    Defendant.

CIVIL ACTION NO.
1:08-CV-2204-JEC

## ORDER AND OPINION

This case is presently before the Court on defendant's Motion to Dismiss the Amended Complaint [20] and plaintiff's Motion for Summary Judgment [41]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion to Dismiss the Amended Complaint [20] should be **GRANTED** and plaintiff's Motion for Summary Judgment [41] should be **DENIED as moot.**

## BACKGROUND

This case involves a severance pay dispute. Plaintiff formerly was employed by Alogent Corporation ("Alogent") as its Executive Vice President of North American Sales and Marketing. (Am. Compl. [17] at ¶ 5.) During his employment, plaintiff and Alogent entered into a severance pay agreement (the "Agreement").

(*Id.* at ¶¶ 6, 7 and Ex. A.) The Agreement required Alogent to pay plaintiff six months of separation pay if he terminated his employment for "good reason" within twelve months of a change of control. (Agreement at § 2(E).)

Defendant acquired Alogent, and undertook all of Alogent's obligations under the Agreement, in January 2008. (Am. Compl. [17] at ¶¶ 9-13.) Plaintiff terminated his employment within three weeks of the acquisition. (*Id.* at ¶¶ 27-28.) When plaintiff resigned, he claimed he had "good reason" and requested severance pay under the Agreement. (*Id.* at ¶¶ 27-28, 33-34.) Defendant refused to pay the benefits. (*Id.*)

Plaintiff subsequently filed this lawsuit, asserting federal claims for violation of the Employee Retirement Income Security Act ("ERISA") and breach of fiduciary duty. (*Id.* at ¶¶ 40-47.)

Defendant has moved to dismiss plaintiff's claims for lack of subject matter jurisdiction. (Def.'s Mot. to Dismiss [20].) Defendant contends that there is no federal question jurisdiction because the Agreement does not qualify as an "employee benefit plan" under ERISA. (Def.'s Mem. in Supp. of Mot. for J. on the Pleadings ("Def.'s Mem.") [9] at 1.) Defendant argues, further, that there is no diversity jurisdiction because defendant's principal place of business is located in Georgia, which is also plaintiff's domicile. (Def.'s Mem. in Supp. of Mot. to Dismiss

2

("DMSMD") [20] at 1.)

## DISCUSSION

I. **Standard for Dismissal Under Rule 12(b)(1)**

There are two types of attacks on subject matter jurisdiction under Rule 12(b)(1): facial and factual. *Garcia v. Copenhaver, Bell & Assoc., M.D.'s, P.A.*, 104 F.3d 1256, 1260-61 (11th Cir. 1997)(citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)). Facial attacks merely require the court to determine whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction. *Id.* at 1261. When considering a facial attack, the Court thus applies a standard similar to that used in Rule 12(b)(6) motions: that is, one assumes the allegations in the plaintiff's complaint are true and construes the facts in the plaintiff's favor. *Sinaltrainal v. Coca-Cola Co.*, --F.3d--, 2009 WL 2431463 at * 3 (11th Cir. 2009).

"'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings.'" *Lawrence*, 919 F.2d at 1529. The standard applicable to a factual attack depends on whether the attack "implicates the merits of plaintiff's cause of action." *Garcia*, 104 F.3d at 1261. If the facts necessary to sustain jurisdiction do not implicate the merits, the court may "weigh the evidence and satisfy itself as to the existence of its power to hear the case,"

3

without applying any presumptive truthfulness to plaintiff's allegations. *Id.* However, if the challenge to subject matter jurisdiction does implicate the merits, the "proper course of action . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits" under Rule 12(b)(6). *Id.*

Defendant's argument that the Agreement is not governed by ERISA is a facial attack on subject matter jurisdiction. *See Sec. Exch. Comm'n v. Mut. Benefits Corp.*, 408 F.3d 737, 742 (11th Cir. 2005)(the question whether viatical settlement agreements qualify as "investment contracts" under the Securities Acts can be answered on undisputed facts in the record under 12(b)(1)). In ruling on this issue, the Court will therefore assume plaintiff's allegations are true and construe the facts in favor of plaintiff. *See Garcia*, 104 F.3d at 1261. However, defendant's diversity argument is a factual attack on subject matter jurisdiction, and is unrelated to the merits of plaintiff's claims. In ruling on the diversity issue, the Court may therefore "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id. See also Dall v. United States*, 42 F. Supp. 2d 1275, 1280 (M.D. Fla. 1998)("the existence of disputed material facts will not preclude th[e] Court from evaluating for itself the merits of the

jurisdictional claims").[1]

## II. <u>Subject Matter Jurisdiction Under ERISA</u>

District courts have federal question jurisdiction over civil actions involving ERISA violations. *See* 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. Plaintiff argues that the Agreement is, or requires the creation of, an "employee benefit plan" that is governed by ERISA. (Pl.'s Resp. in Opp'n to Def.'s Mem. ("Pl.'s Resp.") [13] at 1-2.) Accordingly, plaintiff contends that the Court has federal question jurisdiction under 28 U.S.C. § 1331. (Am. Compl. [17] at ¶ 1.)

### A. "Employee Benefit Plans" Under ERISA

ERISA is not triggered every time an employer offers benefits to its employees. Instead, ERISA governs only "employee benefit plans." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 7 (1987)(noting that ERISA regulates employee benefit plans, not employee benefits). *See also Williams v. Wright*, 927 F.2d 1540, 1543 (11th Cir. 1991)(discussing the "threshold question of whether [an employee] benefits arrangement . . . is a 'plan, fund, or

---

[1] The Court has provided plaintiff an opportunity to conduct discovery on the diversity question, and to supplement its response to defendant's motion based on the results of that discovery. (Order [29] at 2.) *See McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007)(noting that in a factual challenge, the district court must give the plaintiff an opportunity for discovery).

5

program' covered by ERISA").

ERISA does not provide a helpful definition of the term "employee benefit plan." *See Fort Halifax,* 482 U.S. at 8-9 (noting that ERISA defines "employee benefit plans" tautologically).[2] However, the Supreme Court fleshed out the meaning of the phrase in the *Fort Halifax* case. In *Fort Halifax,* the Supreme Court found that a Maine statute requiring one-time lump sum severance payments to employees displaced by plant closures was not an "employee benefit plan." *Id.* at 12. The Court explained that ERISA did not apply because the Maine statute created no "need for an ongoing administrative program for processing claims and paying benefits." *Id.* Applying *Fort Halifax,* a pivotal inquiry in this case is

---

[2] ERISA defines "employee benefit plan" to include:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such a plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

6

whether an "ongoing administrative program" is essential to fulfilling defendant's obligations under the Agreement. *Id.* at 11.

Prior to the Supreme Court's opinion in *Fort Halifax*, the Eleventh Circuit had set forth additional guidelines to aid in the determination of whether an ERISA "plan" exists. In *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982), the circuit court noted that the term "plan" was not well-defined by ERISA. *Donovan*, 688 F.2d at 1372. Attempting to fill the gap, the Court stated that:

> At a minimum . . . a 'plan, fund, or program' under ERISA implies the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits.

*Id.* See also *Williams*, 927 F.2d at 1543 (discussing the general guidelines for identifying an ERISA plan).

Other courts have considered a number of additional factors that account for the contours of the specific benefits at issue. *See Nadworny v. Shaw's Supermarkets, Inc.*, 405 F. Supp. 2d 124, 130 (D. Mass. 2005)("[E]ach case requires an individualized analysis based upon its unique facts and circumstances."). These factors include: (1) the amount of discretion involved in disbursing the benefits, (2) whether the benefits are disbursed on an ongoing or one-time basis, (3) whether the obligation to pay benefits is triggered by a single event, and (4) whether the employer assumed a long-term obligation to review claims and make payments. *Id.* at

7

131. *See also Fort Halifax*, 482 U.S. at 12 and *Belanger v. Wyman-Gordon Co.*, 71 F.3d 451, 455 (1st Cir. 1995).

**B.   The Agreement Is Not An "Employee Benefit Plan."**

The *Fort Halifax* Court made clear that an "employee benefit plan" requires "benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." *Fort Halifax*, 482 U.S. at 11. The benefit at issue in *Fort Halifax*, a one-time lump sum severance payment, did not meet that requirement. *Id.* As the *Fort Halifax* Court explained:

> The requirement of a one-time, lump sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may well never have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan.

*Fort Halifax*, 482 U.S. at 12.

The above statement is equally applicable to the benefits at issue in this case. The Agreement requires defendant to pay six months of separation pay in the event that plaintiff's employment is terminated for good reason, within twelve months of a change of control. (Agreement [1] at § 2(F)(4).) As in *Fort Halifax*, the

8

payment here is triggered by a single event: plaintiff's termination. (*Id.*) Once that event occurs, all defendant is required to do under the Agreement is determine whether plaintiff terminated his employment for good reason, calculate plaintiff's salary (including his bonus) for six months, and send out six checks for that amount in accordance with its ordinary payroll practices. None of those obligations requires an ongoing, administrative scheme.[3] *Compare Williams*, 927 F.2d at 1544-45 (finding that a plan existed where the severance contract required lifetime monthly payments, and periodic review and adjustment based on the employee's needs).

Neither does the Agreement meet all of the criteria for an "employee benefit plan" established by the Eleventh Circuit in *Donovan*. Under *Donovan*, an "employee benefit plan" must, at the very least, have "intended benefits, a class of beneficiaries, [a] source of financing, and procedures for receiving benefits." *Donovan*, 688 F.2d 1373. *See Williams*, 927 F.2d at 1543 (applying

---

[3] Simple, one-time determinations as to whether an employee resigned for "good reason" do not require an administrative scheme. *See Rodowicz v. Massachusetts Mut. Life Ins. Co.*, 192 F.3d 162, 171 (1st Cir. 1999) ("for cause" determination does not transform a severance program into an ERISA plan) and *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997)("for cause" and "satisfactory work" determinations do not involve "the ongoing particularized discretion" that ERISA envisions).

the *Donovan* factors). Here, there is no designated plan administrator, no discernable source of financing for the benefits, and no documented procedures for making or reviewing claims. *See Fort Halifax*, 482 U.S. at 12 (a procedure for receiving benefits requires more than sending out and receiving checks that do not change in amount).

To the extent they have not already been discussed, all of the other relevant factors weigh against plaintiff's argument that the Agreement is an ERISA plan. The mathematical calculations required by the Agreement are simple and mechanical. Defendant has no genuine discretion in determining the amount, timing, or form of the payments. *See O'Connor v. Commonwealth Gas Co.*, 251 F.3d 262, 267 (1st Cir. 2001)("where benefit obligations are administered by a mechanical formula that contemplates no exercise of discretion, the need for ERISA's protections is diminished"). The Agreement does not impose any long-term obligations on defendant to review claims or make payments. It merely requires a lump sum payment to be calculated, divided by six, and disbursed at regular intervals over a short and definite time period. *See Delaye*, 39 F.3d at 237 ("While payment could continue for as long as two years, there is nothing discretionary about the timing, amount or form of the payment.") and *Emery v. Bay Capital Corp.*, 354 F. Supp. 2d 589, 596 (D. Md. 2005)("fulfilling Defendant's obligation under the

10

agreement involves no more than writing a single check for a predetermined amount (or a short series of checks equal to that same amount)").

Finally, it does not appear that the parties intended the benefits to be governed by ERISA. The Agreement specifically states that Georgia law is to govern its provisions. *See Stern v. Int'l Bus. Mach. Corp.*, 326 F.3d 1367, 1374 (11th Cir. 2003) ("The way in which an employer characterizes its plan may be one factor, among others, in determining ERISA coverage."). Neither does the Agreement raise the sort of issues Congress intended to regulate when it passed ERISA. "More elaborately structured benefits" raise those concerns. *Belanger*, 71 F.3d at 454 (noting ERISA's focus on "ongoing investments and obligations [that] are uniquely vulnerable to employer abuse or employer carelessness"). *Id.*

Applying the analytical framework developed in *Fort Halifax* and *Donovan*, as well as the relevant factors identified by other courts, it is clear that the Agreement at issue in this case is not an "employee benefit plan." As the Agreement is not subject to ERISA, its violation does not trigger jurisdiction under 29 U.S.C. § 1132(e)(1). Accordingly, the Court does not have federal question jurisdiction over this case.

### III. Subject Matter Jurisdiction Based on Diversity

In order for a court to have diversity jurisdiction over an

11

action, the parties must be completely diverse.[4] 28 U.S.C. § 1332. Under the complete diversity rule, no defendant can be a citizen of the same state as any plaintiff. *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005). Citizenship is determined for all parties at the time the suit is filed. *Id.* An individual is a citizen of the state in which he is domiciled. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). A corporation is a citizen of both the state of its incorporation and the state where it has its "principal place of business." *MacGinnitie*, 420 F.3d at 1239.

The Eleventh Circuit has adopted the "total activities" test to determine a corporation's principal place of business. *MacGinnitie*, 420 F.3d at 1238 (citing *Vareka Inv., N.V. v. Am. Inv. Prop., Inc.*, 724 F.2d 907, 910 (11th Cir. 1984)). "This analysis incorporates both the 'place of activities' test (focus on production or sales activities), and the 'nerve center' test (emphasis on the locus of the managerial and policymaking functions of the corporation)." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005)(quoting *Vareka Inv.*, 724 F.2d at 910). The total activities test requires a "somewhat subjective analysis to choose between the results of the nerve center and

---

[4] The amount in controversy must also be met, but that requirement is not disputed here. See 28 U.S.C. § 1332.

place of activities tests, if they differ." *McGinnitie*, 420 F.3d at 1239. However, the nerve-center related facts have greater significance when a company's activities are not concentrated in one place or are "far flung." *Sweet Pea Marine*, 411 F.3d at 1248 (citing *J.A. Olson Co. v. City of Winona*, 818 F.2d 401, 409 (5th Cir. 1987)).

Plaintiff is a Georgia citizen. (Am. Compl. [17] at ¶¶ 3-4.) Defendant is incorporated in Tennessee. (DMSMD [20] at 6-7.) The parties agree that before May 7, 2008, defendant's principal place of business was also in Tennessee. (Pl.'s Supp. Resp. to DMSMD ("Pl.'s Supp. Resp.") [34] at Ex. 5.) However, defendant claims that it moved its headquarters, and all of its executives, to Norcross, Georgia on May 7, 2008. (DMSMD [20] at 6-7.) Defendant thus contends that its principal place of business was in Georgia when plaintiff filed this lawsuit on July 3, 2008. (*Id.* at 7.)

### A. Defendant's Business Activities Are "Far Flung."

Defendant provides "technology-based products and services to financial institutions across the country." (DMSMD [20] at 4.) To meet its nationwide agenda, defendant utilizes 486 employees in 37 states. (*Id.* at 4-5 and Schiltz Aff. at ¶¶ 2-3.) As of July 3, 2008, defendant maintained two offices in Georgia, and one in California, Colorado, Missouri, Florida, New York, Tennessee, and Texas. (*Id.*)

13

Under the circumstances, there is no doubt that defendant's operations are far-flung: defendant provides products and services on a nationwide basis, via employees stationed in 37 states and offices in eight states. *See Sweet Pea Marine*, 411 F.3d at 1248 (explaining that a nerve center focus is appropriate when business activities are conducted in different locations) and *McLendon v. Georgia Kaolin Co., Inc.*, 822 F. Supp. 1580, 1581 (M.D. Ga. 1993)(finding that a business's operations were far flung where the business was active in four states and Canada). As a result, the Court will focus on the nerve center facts when determining defendant's principal place of business. *See TSG Water Res., Inc. v. D'Alba & Donovan Certified Pub. Accountants*, 260 Fed. Appx. 191, 196 (11th Cir. 2007)(emphasizing the nerve center facts where a company's activity was split between the Caribbean, Georgia, and Florida).

**B.   Defendant's Principal Place of Business Was Located in Georgia at the Time the Suit Was Filed.**

Although defendant's activities are widely dispersed, most of its principal executives, including its CEO and president, have been in Norcross, Georgia since the end of 2005. (Def.'s Mem. [20] at 5.) On May 7, 2008 defendant formally moved its headquarters to Norcross, and announced the move to the SEC. (*Id.* at 6-7.) In addition, by July 3, 2008: (1) Norcross had become the presumptive

14

location for board of director meetings; (2) defendant's accounts payable and financial reporting were managed from Norcross; (3) most of the company's accounting records were located in Norcross; and (4) the corporate minute books had been relocated to Norcross. (*Id.* at 6-7.)

In spite of the above evidence, plaintiff argues that defendant's principal place of business is still located in Brentwood, Tennessee. In support of this argument, plaintiff cites an October, 2007 lawsuit that defendant filed in the Middle District of Tennessee, in which defendant claimed that it was a "Tennessee corporation." (Pl.'s Supp. Resp. [34] at Ex. 2.) Defendant's contentions in October of 2007 have no bearing on its principal place of business in July of 2008. Indeed, the parties agree that defendant's principal place of business, prior to May 7, 2008, was Brentwood, Tennessee. In addition, defendant has produced a filing from a November, 2008 lawsuit, in which defendant denied in its answer that its principal place of business was located in Tennessee. (Def.'s Reply [35] at 2.)

Plaintiff also cites defendant's 2008 annual registration statements from Georgia, Tennessee, Florida, California, New York, Missouri, Texas, and Alabama, each of which represented that defendant's principal place of business was in Tennessee. (*See* Def.'s Secretary of State Filings, attached to Pl.'s Supp. Resp.

15

[34].) However, the annual reports that plaintiff cites were filed prior to July, 2008. (*Id.*) The annual report that defendant filed with Colorado in June, 2008 (one month prior to the lawsuit), identifies Georgia as defendant's principal place of business. (*See* CO Registration Form [34] at 21-23.) This is consistent with defendant's assertion that it is updating its principal place of business as each annual report comes due. (*See* Def.'s Reply [35] at 2.)

Plaintiff has not produced any additional evidence to rebut defendant's persuasive showing that its nerve center was located in Georgia at the time this suit was filed. *See MacGinnitie*, 420 F.3d at 1239 ("Under the nerve center test, the location of the corporate offices is generally the principal place of business.") and *McLendon*, 822 F. Supp. 1580 (noting that the nerve center is where defendant's executives are housed and corporate decisions are made). Neither has plaintiff produced evidence of any concentrated activities in Tennessee sufficient to outweigh the nerve center facts. *See McCormick*, 293 F.3d at 1257 ("The party invoking the court's jurisdiction bears the burden of proving . . . the existence of federal jurisdiction."). Accordingly, the Court finds that defendant's principal place of business on July 3, 2008 was located in Georgia.

Because both parties were citizens of Georgia on the date this

suit was filed, diversity jurisdiction does not exist. *See MacGinnitie,* 420 F.3d at 1239. As discussed above, federal question jurisdiction is also lacking. The Court thus **GRANTS** defendant's motion to dismiss this case under Federal Rule 12(b)(1) for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's Motion to Dismiss Amended Complaint [20] and **DENIES as moot** plaintiff's Motion for Summary Judgment [41]. The Clerk is directed to **CLOSE this action.**

SO ORDERED, this 21 day of September, 2009.

_____
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE